May it please the court, my name is Don B. Kelly and I represent the defendant appellant in this appeal. The district court erred in finding the plaintiff's marks not abandoned in this case, in its unclean hands ruling, and its assessment of damages and attorney's fees. As to abandonment, the peculiar facts of this case, and this case has some peculiar facts which really makes it an outlier, show clearly and convincingly evidence of loss of mark significance. As of January 1, 2015, plaintiff had no mark rights to its marks with the words Lawn Managers, and I think at this point... Why is that? That's a strong proposition, but what's the authority and the facts that support that position? The authority, Your Honor, it falls in section 1127, which was cited in our counterclaim for invalidity based on abandonment, and it's the definition of abandonment. There are two definitions. Subparagraph one is a... requires an intent of the mark holder. Subparagraph two provides for facts without intent, and basically acts or admissions and the loss of mark significance. So which do you rely on, one or two? Number two. Number two. How do you get there when the use of the Very simply, Your Honor, because what happens is you have the omission, the naked licensing... How do you have naked licensing when it's part of a court order? It's not, well, you can just have this or use this however you want to. It was done pursuant to court order. That is in fact naked licensing because naked licensing focuses on the terms, whether it be a court order, consent decree, or an agreement. That's what you have here. In fact, to use the vernacular, we probably have a naked license on steroids because there's... it was a wholesale right to use the name and impersonate a company with no quality control whatsoever. And that's... Were there allegations that the quality control of Progressive was so poor that people no longer thought managers was a good brand? No, and that's not the standard. With naked licensing, with any mark, Your Honor, the mark has a degree of quality to it. It's not whether it's poor or less. It's whether it's consistent. And with naked licensing, the hallmark is the retention of control to reserve and preserve that same level of quality. That was not here. What was the proof that the quality itself actually changed? Well, there's no evidence of it. The proof of the perception, it's the mark's significance to confusion as to who is who. And that's what we have here. When a mark doesn't designate a single source of origin... But can the... can the infringer or alleged infringer create the confusion and benefit from its existence? Not with infringing acts, but here, what caused it, Your Honor, and that's a precise question which is good to know. It wasn't infringing acts which caused the mark. It was the use of the mark in complete compliance with the decrees, meaning you may hold yourself out as lawn managers. And that's where this case distinguishes itself. This isn't a case where the plaintiff failed to police and bad actors undercut its mark. This, what happened here, was the natural progression of what happens when you say, you may hold yourself out and call me the same thing as my company, send employees out with our uniforms, our old uniforms, our trucks, and things like that. That's the inevitable consequence. So when did... when did... when did that occur? Did that occur upon the initiation of the order? When the order became effective? Well, that occurred, Your Honor, over the course of that two and a half years. And there's also something very... At some point, the court oriented, and the court distinguished the acts that occurred after the end of the, in essence, ordered licensing. It tried to. And the acts before. Yes, it tried to. And in fact, we've been talking about a license. It's more appropriate to discuss there was the 2012 order, and then there was the 2014. They're really two separate documents in there. And each gave the defendant, or Mrs. Smith, the right to utilize that name and impersonate the plaintiff. So what happens over those two years, and this is the adjunct of Section 1127-2, the acts caused the loss of significance. And in this case, again, the peculiar facts. We had an admission and office manager or plaintiff, which were so significant, Judge Nose remarked upon it in his order. He actually said, as of the time, at the beginning of 2015, the ability to distinguish the two companies was gone. So that the ability to assess whatever damage they might have been from infringement. And that's a very difficult issue, for what I'm going to talk about in a second. It was gone. It was impossible. That wasn't due to wrongful acts of the plaintiff. That was due to the acts in compliant with that divorce decree. And again, that's what makes this case a different animal than these other naked licensing cases. So as of that time, in 2015, on this record, again, admissions, opening statement, and testimony, and repeatedly throughout Judge Nose's decision, he points to this consumers cannot distinguish between two companies. You don't have a mark anymore. A mark tells consumers where those services come from, and it's an exclusive source. And that's why this case, you have abandonment. And Judge Nose, I think he foresaw that, and rather than uphold the compelled conclusion, he cited the Freestyle case and said that we have an ongoing close relationship. Actually, he didn't say ongoing. We had a close working relationship, which may have been true before. But these cases don't hold that a prior close working relationship alone will salvage a naked license. In fact, those cases have that ongoing relationship. And we point out, again, the peculiar facts of this case. At the opening statement, plaintiff's counsel noted that these parties weren't even talking to each other. And this tags in to those Stanfield cases we mentioned, which shows that when you have an adversarial relationship, that prior close working relationship exemption goes away. So what we have here, we've got the hallmarks of a section 1127 abandonment. And if it doesn't apply in this case, then really what we're saying is it never applies. When people are hopelessly confused between two companies, you've got loss of mark significance. There's another issue in this case, which we've addressed, and with regard to unclean hands. This ruling is overtly inconsistent from a procedural standpoint, and I'd like to explain why. At page six of the ruling, the district court said that Missouri laws be used when a contract's provision are unclear, indicating that there's some ambiguity to this, the provisions of the decrees. Well, the determination that a contract is ambiguous is an objective one that is based upon a review of a document as a whole, and on appeal, that's a de novo review. The ruling in this case about what might make it ambiguous is not there. The decision is devoid of any such analysis. It remarks that the meaning of a contract is in the touchstone is intent, but there's no discussion of what the intent would be. There's no evidence citing what evidence the party's intent or specific provisions of the marital settlement agreement that indicated that intent. For example, there was a provision that pointed out that the actual homes, accounts that were given to each of the individuals, those, if they wanted to sell those, they had to give the other side a right to first purchase. That was never discussed. So that, I mean, that ruling, that has no explanation in there. Yet, we now have the contradictory statement later on in the opinion that where the court says the judgment expressly limited the non-solicitation and non-compete provisions to two years. So we're left baffled. Was it ambiguous or was it not? If it was ambiguous, then we ask ourselves, why didn't the court look at the state court decisions that were filed with the court for guidance, which it didn't do, and which we've pointed out are contradictory with what the court. And I would submit to the court that if you have a summary judgment ruling that has at least the potential for collateral estoppel to not even mention it and give it deference is erroneous in that respect. Obviously, parties thought it, they were related and it, this is, this is a point that I don't think has been established because we're talking about the parties and the different proceedings. We need to remember the plaintiff was an asset in the divorce decree. It was an asset. So this, again, we have very unusual facts in this case which compel this sort of understanding. Mind you though, what we had here when Judge, when Judge Nosha said no unclean hands, now we have tension with what's going on in the state court because the state court issued TRO, a preliminary injunction, and a summary judgment ruling to the contrary. So now that case is on appeal and we've got the tension in there. I would also point out on the unclean hands ruling, there's another significant issue which we take issue with and we're not sure how the judge concluded this, but the court cited without citation that the only claim of unclean hands the defendant was making was with regard to the solicitation of service of customers after July 25, 2000. We want you back. Yes, Your Honor. We had 16 or 17 proposed findings of fact specifically addressed to, you know, things that were going on before and that's, you know, at 820 in the record. So I'm not sure where that stemmed from, but we were clearly, the evidence in there was mentioning about what was going on The damages award in this case are clearly erroneous. In fact, they're plainly unjust. The expert testimony was based upon faulty and unsupportable premise that all of defendants revenues were due to infringement and I want to point something out that's very significant here. Throughout this case from the complaint which was sworn, there was the assertion that using the name that was given by the decrees, progressive lawn managers was in and of itself infringing. In fact, we've cited case law that shows that when one mark incorporates another, there's a rebuttable presumption it's infringing. In this case, the plaintiff just said all your revenues are due to infringing acts. Well, what was he talking about? We asked him, did you distinguish between the use of progressive lawn managers and whatever confusion that might occur? No. Now again, beyond the complaint saying that using progressive lawn managers or using managers or management is confusing and infringing, there was a summary judgment motion that sought to take it away and an opening statement plaintiff again asked to take away the right to use progressive lawn managers. So now, whatever his calculations were, included two elements of infringement, one of which was clearly not infringement because we were allowed to be progressive lawn managers. Counselor, you're in your rebuttal time. You can continue if you'd like. I will sit down. Thank you, Your Honor. Ms. Ryan. Thank you. May it please the court. We believe that the judgment should be I wanted to first give you a quick overview. I think I'm going to be responding to the points that Mr. Kelly made in the course of presenting my argument. The lawn managers trademark is valid and registered with effective dates in November of 2011 and February of 2015. It's owned by lawn managers. Randy Zweifel, the owner of lawn managers, began using the name, the business was incorporated. There was substantial evidence of confusion stemming from progressives use of the lawn managers mark after progressives right to do that. Would you address the position that the decree created a circumstance of naked licensing, which in essence leads to an Decree is probably not a model of intellectual property concepts. I think the attorneys that were involved at the time didn't have any conception of naked licensing. They were trying to divide up the assets of the company, which was done and the intention was, as the trial evidence showed, the intention was that her new name for a period of time, the same name for a period of time, and then the new name going forward after that. But doesn't that, from that moment, create or at least shortly after when the company start operating in the same geographic area, doesn't that lead to the immediate confusion and the abandonment of mark? I mean, there were some shared employees, I think, or employees who had worked with one and the other. There were trucks with the same name in the same neighborhood using the same signage in some cases. There were checks that were owed to one company that were mailed to the other company. Doesn't that suggest that the mark had lost its value at that point? That it had been abandoned? No, it suggests that both that the mark had value and that both companies were using the name because it had value and it had not lost its significance. Ms. Smith wanted to use the lawn managers name because she wanted to operate as if she was still the same company and that's what was done. It would have been very confusing to consumers though, right? It was confusing, but no more confusing than two McDonald's franchisees owned by two different companies. The point is that as of January 1st, 2015, she had a duty to name so the confusion could subside and that wasn't done and that's what Judge Nose found. She no longer had the right to use the lawn manager's name after December 31st, 2014. She continued to do so. That's if it wasn't abandoned? If it wasn't abandoned previously, yes, but during the period of time when she had it was not abandoned. The significance, the confusion doesn't show loss of significance. Is there any specific period of time of usage that's required to establish abandonment? The statute talks about three years, but I think that's for non-use. Now the defendant pled that there was abandonment for three years, that it was in their answer, but I'm not sure that technically that applies. In other words, 1127 under the definition of abandonment talks about loss of use for three years or non-use for three years. So we don't have a non-use, we've got a dual use. We have dual use, yes, for two and a half years approximately and then at the point where there should have been clarity, there wasn't because at that point, if you will look at the plaintiff's trial exhibit 105, which is the yard sign that Ms. Smith started using, the word progressive in the little graphic and the arch with the grass. At that point in time, she's made her company look like it's still lawn managers when she no longer had the right to do so and that's what Judge Nose found. He found that as a user of the name, as a licensee, she had a duty when she no longer had that right to distinguish her company and not to make it continue to look the same and to use the same, the confusing mark and to use the same name. So basically, this is a holding over case like the Heaton case was. So I've sort of lost the pattern of my argument here, but let me turn to the unclean hands issue at this point. You don't have anything else to respond on or naked licensing issues? Well, yes, there's the entire licensee estoppel issue, which Judge Nose did not reach. He, in ruling on our motion for summary judgment, which we had filed in order to kind of clean up the pleadings and to know what we were trying, he had held that the licensee estoppel would not apply or he was not going to apply it because there wasn't complete identity of the parties, citing the Fair Isaacs case. However, it's our belief that in this case where the license was actually given by Randy to Linda in the divorce, they each had these companies. They were each the 100% shareholder. They were each in privity with their companies. We believe that licensee estoppel should apply and Linda should not be committed to bring this abandonment claim. And Eighth Circuit has repeatedly applied licensee estoppel. As I said, Judge Nose did not reach that issue. In his memorandum opinion, he did earlier in denying summary judgment, but then on the fuller facts after trial, he didn't reach the issue. We think licensee estoppel would apply and would mean that progressive cannot argue for abandonment. Progressive is not permitted to raise that argument. I can take you back to what you were discussing earlier on the naked licensing. What's, in your view, your best case for the proposition that a prior working relationship is sufficient given what your co-counsel described here about the adverse relationship between the parties? And what's your best case on that particular issue? I think if you take a close look at the Free Cycle case, Judge Nose I think cited it because it stated the test. The actual test is stated more clearly in footnote one of the Free Cycle case than it is in the main body of the opinion and it uses the word or. If there is reasonable reliance on the other party's quality control, that can substitute for written terms of control and actual control. So the question here is whether there's reasonable reliance. These two parties were not engaged in any litigation. They were not battling or communicated at all between July 25, 2014 when the settlement agreement was met. There was reasonable reliance. The evidence at trial showed that Progressive did the same seven treatments. The billing statements were very similar. They were following the same business plan, connecting with customers in the same way as our client's company. And so there was a stated and the disjunctive, the or. But it's not the only case. There's a number of cases where there's been a family relationship. As I said, the divorce settlement agreement is not a model of trademark law. But they were just trying to separate these two companies so that the parties could go forward. Ms. Smith could set up her Progressive lawn managers and operate her own company. And that was the intention of what they were trying to do. They probably should have brought in a trademark lawyer, but they didn't do that. The other thing about that issue is that Progressive didn't offer any independent evidence of loss of significance. The statutory definition calls for proof of loss of significance. And it's a high burden of proof to prove abandonment. That's been recognized by this court and other courts, that it's a high burden of proof. If confusion, post-license confusion, equals loss of significance, how do you ever distinguish between proof of plaintiff's case and defendants' argument that it's been abandoned because of the same evidence? They had no independent evidence of loss of significance. There was no survey evidence. There was no evidence that any third parties were using the mark or using the term lawn managers in any advertising. There was no evidence at all of loss of significance that was presented. So they're just purely relying on the same evidence of loss of confusion that proves plaintiff's case, and which judge knows relied upon, which is the post-license records of customer confusion, the phone calls. Okay, turning to the unclean hands, and I see that I'm starting to run down on my time here. Defendants' argument on unclean hands, they're trying to turn collateral estoppel on its head, basically. They brought the issue into this case. They raised it as a defense. Judge Knost felt that he needed to address the issue, and he looked at the language of the agreement and found that the words perpetual and forever do not appear in the award of customers, in the division of customers. Customers are not trucks. Customer relationships are not trucks. They're not wheelbarrows. They're not items of property that can be awarded forever, unless the agreement says forever or perpetual. And so he properly interpreted that language. And defendant's whole argument on unclean hands relies on this legal argument that Ms. Smith owns these customers forever. It's not a tenable argument as a legal matter, and that's what Judge Knost found. He also found that it would only go to the question of damages rather than overall liability. And so he rejected it based on the law. Now, Progressive keeps arguing that what happens in Hillsboro should control the federal court. We think that's a ridiculous argument. Collateral estoppel issue preclusion applies to the first final judgment, and the first final judgment is Judge Knost's opinion. Collateral estoppel works in the other direction than what Progressive is arguing for. Judge Knost's opinion should be binding on the Hillsboro court and not the reverse. That's just the way collateral estoppel works. We also pointed out in our briefing that Mr. Zweifel filed a reservation of rights, if you want to get into the whole abstention issue and whether abstention should have been granted or not. Judge Knost initially stayed the case, and then on our motion for reconsideration, where we briefed all the abstention doctrines that could apply but didn't, he reversed himself and put the case back on the active docket. So he did not abstain. He declined to abstain after considering the question, and that's an abuse of discretion review by this court. So the case was properly on the district court's docket. The district court properly addressed the unclean hands issue because Progressive brought it into the case as a defense. Judge Knost ruled first, and his ruling is binding on the state court and not the other way around. I only have a few seconds left. I would just say that the damages rulings were proper based on the case and based on the evidence, rather, and the ruling on the acting fitness standard, which is a more flexible standard, and Judge Knost properly awarded fees here. Okay. Thank you, Ms. Ryan. Thank you. Mr. Kelly, your rebuttal. Thank you, Your Honor. First off, there's a major issue with the damages, too. Judge Knost, as we mentioned when he noted that the expert had included revenues from before July 2016 for customers that were specifically given to Linda, made an equitable accounting. He didn't provide any indication how that mathematics worked, but in his ruling, he did include the revenues in his equitable accounting after July 2016 when the plaintiff was under a TRO and is still under a restriction. So, in effect, he ignored the fact that though the contract had been interpreted by the state court to prohibited solicitation and business with those customers. That's a major problem with that damage calculation. So, not even the equitable accounting can cure. Attorney's fees. Octane fitness requires we look at litigation conduct. There's no allegations of misconduct here with regard to presentation of issues or anything like that that is wrongful. Secondly, or thirdly, excuse me, with regard to abandonment, Judge Knost stated, he didn't win many things from Judge Knost, but he noted the same evidence shows that the damage to consumers ability to differentiate between plaintiff and defendant was already done by the date infringement began. That's abandonment. With regard to the three years, your honor, you asked a question. Three years of non-use is presumed to show intent under the first prong of the abandonment definition in section 1127. It is not, there's no time limit for our second prong for abandoned by loss of distinctiveness. So, that's all I wanted to point out. If the court has further questions, I'd be happy to answer. I see none. Thank you. Thank you, Mr. Kelly. Thank you also, Ms. Ryan. We appreciate your argument to the court this morning and the briefing that you have provided us and we'll take your case under advisement.